******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# MARK BANKS *v.* COMMISSIONER OF CORRECTION
## (AC 39830)

DiPentima, C. J., and Keller and Prescott, Js.

*Syllabus*

The petitioner, who had been convicted of kidnapping in the first degree, robbery in the first degree, and criminal possession of a pistol or revolver in connection with robberies at two stores, sought a writ of habeas corpus, claiming that the trial court's jury instruction on kidnapping violated his due process right to a fair trial. In one instance, he locked two individuals in a bathroom with something propped against the door, and in the other, he told two individuals to get into the bathroom and lock themselves in. At the petitioner's criminal trial, the court failed to provide a jury instruction in accordance with *State* v. *Salamon* (287 Conn. 509), in which our Supreme Court held that a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained in an extent exceeding that which was necessary to accomplish or complete the other crime. *Salamon* also set forth factors for purposes of making the determination of whether a criminal defendant's movement or confinement of a victim was necessary or incidental to the commission of another crime. The petitioner claimed that the failure to instruct the jury in accordance with *Salamon* deprived the jury of the opportunity to consider whether his brief restraints of the individuals were incidental to his robberies and, therefore, were not kidnappings. The habeas court rendered judgment denying the habeas petition and, thereafter, granted the petition for certification to appeal, and the petitioner appealed to this court. He claimed that the habeas court improperly determined that the lack of a *Salamon* jury instruction concerning the intent and conduct necessary to find the petitioner guilty of kidnapping was harmless beyond a reasonable doubt. *Held* that the habeas court improperly concluded that the absence of the *Salamon* jury instruction constituted harmless error: the first three *Salamon* factors—the nature and duration of the victim's movement or confinement, whether that movement or confinement occurred during the commission of the separate offense, and whether the restraint was inherent in the nature of the separate offense—weighed in the petitioner's favor, as the movement to the bathrooms in both cases was brief in distance and the duration of movement and confinement lasted only a few minutes, the restraint occurred extremely close in time to the robberies, it was conceivable that jurors could view the fact that the petitioner moved the individuals into the bathrooms so that he could escape as being part and parcel of the robberies, and the habeas court improperly concluded that the movement and confinement of the four individuals at the two stores occurred after the robberies had been committed in that the crime of robbery does not necessarily terminate with the taking of anther's property, and because the jury could have found that the movement of the individuals to the bathrooms and confinement therein was inherent to the nature of the robberies at the two stores, in the absence of a *Salamon* instruction, there was nothing that prevented the jury from finding the petitioner guilty of kidnapping even if it had concluded that the restraint was incidental to the robberies; moreover, although the remaining *Salamon* factors did not afford the petitioner support, the significance of the factors that weighed in his favor outweighed the significance of those that supported a claim of harmless error, and the respondent Commissioner of Correction did not meet the considerable burden to persuade the court beyond a reasonable doubt that the absence of the *Salamon* jury instruction did not contribute to the jury verdict regarding the kidnapping counts, as the question of the petitioner's intent in the movement and confinement of the individuals was not uncontested or supported by overwhelming evidence, and, thus, the respondent failed to prove that the absence of a *Salamon* instruction was harmless beyond a reasonable doubt.

(*One judge dissenting*)

Argued October 23, 2017—officially released August 7, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*; *further proceedings.*

*Pamela S. Nagy*, assistant public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The dispositive issue in this appeal is whether the absence of a jury instruction required by our Supreme Court's seminal decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), and subject to a retroactive application in a subsequent collateral proceeding; see *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011); constituted harmless error. See *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 136 A.3d 596 (2016). This court recently articulated the issue as follows: "[A] defendant who has been convicted of kidnapping may collaterally attack his kidnapping conviction on the ground that the trial court's jury instructions failed to require that the jury find that the defendant's confinement or movement of the victim was not merely incidental to the defendant's commission of some other crime or crimes." *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 736, 129 A.3d 796 (2016). Further, a reviewing court must conclude, beyond a reasonable doubt, that the absence of the *Salamon* instruction did not contribute to the kidnapping conviction. *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 428, 154 A.3d 1054 (2017).

In this case, the respondent, the Commissioner of Correction, bears the arduous burden of demonstrating that the omission of an instruction on incidental restraint did not contribute to the verdict. See, e.g., id., 428–29. Accordingly, our task is *not* to determine whether sufficient evidence existed in the record to support a conviction of kidnapping or "whether a jury likely would return a guilty verdict if properly instructed; *rather, the test is whether there is a reasonable possibility that a properly instructed jury would reach a different result.*" (Emphasis added.) *State* v. *Flores*, 301 Conn. 77, 87, 17 A.3d 1025 (2011). We conclude that, under the facts and circumstances of this case, as well as the analysis established in our appellate precedent, the absence of the *Salamon* instruction was not harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the habeas court denying the petitioner's petition for a writ of habeas corpus, and remand the case with direction to vacate his kidnapping convictions and to order a new trial with respect to those charges.

The petitioner, Mark Banks, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, he claims that the decision of the habeas court violated his due process right to a fair trial pursuant to the fifth and fourteenth amendments to the United States constitution. Specifically, he contends that the court improperly determined that the lack of a jury instruction in his underlying criminal case concerning the intent and conduct necessary to find the petitioner guilty of kidnapping in accor-

dance with *State* v. *Salamon*, supra, 287 Conn. 509, was harmless beyond a reasonable doubt. We agree with the petitioner.

The following facts and procedural history are relevant to this appeal. In 1997, following a jury trial, the petitioner was convicted of four counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B),[1] four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and two counts of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[2] The trial court sentenced the petitioner to a total effective sentence of twenty-five years incarceration[3] consecutive to any sentence the petitioner was presently serving.[4]

In 2000, following a direct appeal, this court affirmed the judgments of conviction, setting forth the following facts that a reasonable jury could have found concerning the petitioner's crimes: "Michael Kozlowski and Howard Silk were working [on the evening of August 30, 1995] at the Bedding Barn store in Newington. The [petitioner], posing as a customer, entered the store shortly before closing at 9 p.m.; there were no other customers in the store. Kozlowski approached the [petitioner] and began to show him some king-size beds. The [petitioner] pulled a large silver gun from a bag he was holding. The gun had a round cylinder. The [petitioner], while pointing the gun at Silk, ordered Kozlowski to open the cash register. After taking money from the register, the [petitioner] requested the store's bank bag or safe. The [petitioner] then asked Silk and Kozlowski for the money from their wallets. He then took money from Silk, but not from Kozlowski. Silk and Kozlowski were then locked in the bathroom with something propped against the door and told not to leave or they would be shot. A short time later, when Silk and Kozlowski heard the doorbell in the store ring, they assumed the robber had left, pushed open the bathroom door and called the police." *State* v. *Banks*, 59 Conn. App. 112, 116, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000).

"Kelly Wright was working [on the evening of September 13, 1995] at the Bedding Barn store in Southington. Shortly before 9 p.m., while Wright's roommate, Idelle Feltman, was waiting to take her home, the [petitioner] and an unknown woman, posing as customers, entered the store. The [petitioner] pulled a gun from a bag he was carrying, held it to Feltman's temple, and asked her to open the cash register and to give him money. The [petitioner] then requested the bank bag, which Feltman gave him. The [petitioner] then told Wright and Feltman to get into the bathroom and lock themselves in. Shortly thereafter, Feltman and Wright heard the door buzzer and surmised that the [petitioner] had left the store. They exited the bathroom and called the police." Id., 116–17.

On January 13, 2014, the petitioner filed the petition for a writ of habeas corpus underlying the present appeal, which he amended on August 12, 2016, alleging a violation of his due process right to a fair trial. In his amended petition, the petitioner challenged his two kidnapping convictions on the ground that the instructions given to the jury were not in accordance with *State* v. *Salamon*, supra, 287 Conn. 509. On October 14, 2016, the respondent filed his return to the amended petition. On October 17, 2016, both sides stipulated to a trial on the papers.[5]

On October 20, 2016, the court issued a memorandum of decision denying the petition. In its memorandum of decision, the court set forth a detailed version of events based on the transcript from the petitioner's criminal trial.[6] The habeas court concluded that the respondent demonstrated that the absence of a *Salamon* instruction at the petitioner's criminal trial constituted harmless error because the "movements and confinements [of the employees] were perpetrated *after* the crimes of robbery were committed and cannot conceivably be regarded as coincidental with or necessary to complete the substantive crimes of robbery. Depriving someone of their freedom of movement by imprisoning them in a bathroom subsequent to acquiring their money, although convenient for the robber, is not inherent in the crime of robbery. It is crystal clear that the petitioner's intent and purpose for locking up his robbery victims was to postpone their summoning of assistance and reporting of the crime to police, thus facilitating the petitioner's escape from the scene and delaying detection of his crime, identity, and/or whereabouts. Also, the petitioner extended the period of infliction of duress and distress for the victims by restraining them beyond the time of fulfillment of his quest, i.e., seizure of cash." (Emphasis in original.) The habeas court subsequently granted the petitioner's certification to appeal on October 27, 2016. This appeal followed.

The petitioner claims that the habeas court improperly determined that the lack of a jury instruction in his underlying criminal case concerning the intent and conduct necessary to find the petitioner guilty of kidnapping in accordance with *State* v. *Salamon*, supra, 287 Conn. 509, was harmless beyond a reasonable doubt. We agree.

The determination of whether the trial court's failure to provide a *Salamon* instruction constitutes harmless error is a question of law subject to plenary review. *Farmer* v. *Commissioner of Correction*, 165 Conn. App. 455, 459, 139 A.3d 767, cert. denied, 323 Conn. 905, 150 A.3d 685 (2016); see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 65; *Nogueira* v. *Commissioner of Correction*, 168 Conn. App. 803, 814, 149 A.3d 983, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

A review of the evolution of our kidnapping jurisprudence will facilitate the analysis in this case. Following the petitioner's criminal trial and direct appeal, our Supreme Court issued several significant decisions with respect to the crime of kidnapping. See *State* v. *Salamon*, supra, 287 Conn. 542–550; see also *State* v. *DeJesus*, 288 Conn. 418, 430–34, 438, 953 A.2d 45 (2008); *State* v. *Sanseverino*, 287 Conn. 608, 620–26, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, supra, 437, and superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009).

"In *Salamon*, we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a. . . . The defendant had assaulted the victim at a train station late at night, and ultimately was charged with kidnapping in the second degree in violation of § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. . . . At trial, the defendant requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must acquit the defendant of the charge of kidnapping. . . . The trial court declined to give that instruction. . . .

"[W]e [thus] reexamined our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. . . . We ultimately concluded that [o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. *Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime*. . . .

"We explained in *Salamon* that *a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that had independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime.* Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For

purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 459–60, 988 A.2d 167 (2009); see also *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 423–24; *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. App. 742.

Next, in *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 742, our Supreme Court considered whether its decisions in *State* v. *Salamon*, supra, 287 Conn. 509, *State* v. *Sanseverino*, supra, 287 Conn. 608, and *State* v. *DeJesus*, supra, 288 Conn. 418, applied retroactively to collateral attacks on final judgments. It ultimately concluded that "when an appellate court provides a new interpretation of a substantive criminal statute, an inmate convicted under a prior, more expansive reading of the statute presumptively will be entitled to the benefit of the new interpretation on collateral attack. We decline, however, the petitioner's invitation to adopt a per se rule in favor of full retroactivity." Id., 760; see also *Farmer* v. *Commissioner of Correction*, supra, 165 Conn. App. 459–460; *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 844–45, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015); *Epps* v. *Commissioner of Correction*, 153 Conn. App. 729, 735, 104 A.3d 760 (2014) ("[o]ur Supreme Court later ruled that its holding in *Salamon* is retroactive"), appeal dismissed, 327 Conn. 482, 175 A.3d 558 (2018) (certification improvidently granted).

Finally, in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 61, our Supreme Court held that the procedural default rule does not apply to claims that the trial court failed to instruct the jury in accordance with *State* v. *Salamon*, supra, 287 Conn. 509, in cases rendered final before that decision was issued. The court also addressed the proper standard for determining when the failure to provide the jury with a *Salamon* instruction requires a new trial. Id., 76. It reasoned that the failure to instruct the jury in accordance with *Salamon* is considered to be an omission of an essential element of kidnapping, and thus, rises to the level of constitutional error. Id., 78.

"[T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a

reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [only] if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) Id., 77–78; see also *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 770; *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 427–28; *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 812–13; see generally *State* v. *Fields*, 302 Conn. 236, 245–46, 24 A.3d 1243 (2011) (on direct appeal, jury instruction that omits essential element from charge constitutes harmless error only if reviewing court concluded, beyond reasonable doubt, that omitted element was uncontested and supported by overwhelming evidence such that jury verdict would have been same absent error); *State* v. *Flores*, supra, 301 Conn. 83 (on direct appeal, test for determining whether constitutional error in jury instruction is harmless is whether it appears beyond reasonable doubt that error complained of did not contribute to verdict).[7]  We emphasize that to prevail on his habeas claim that the absence of a *Salamon* instruction did not constitute harmless error, the petitioner is *not* required to establish that there was insufficient evidence to convict him or that a properly instructed jury likely would find him guilty. *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 85; *State* v. *Flores*, supra, 301 Conn. 87.

We now turn to the petitioner's claim, and the dispositive issue,[8] that is, whether the respondent failed to establish that the absence of a *Salamon* instruction constituted harmless error. Specifically, the petitioner argues that, on the basis of the evidence presented at his criminal trial, "it would have been reasonable for jurors to conclude that the brief restraint that occurred during the commission of the robbery was incidental to the robbery, and therefore, was not a kidnapping. Because the petitioner was deprived of the opportunity of having the jurors consider this issue, which was susceptible to more than one interpretation, the respondent did not prove the error was harmless beyond a reasonable doubt."

The respondent counters that the habeas court properly concluded that the absence of the *Salamon* instruction constituted harmless error because "[t]he petitioner had completed the robberies without need for, and prior to, moving and restraining the [employees], and he moved and restrained them simply to facilitate his escape without detection." We agree with the petitioner.

"To answer the question of whether the absence of

the *Salamon* standard constituted harmless error requires us to examine the factors and principles enunciated in that case." *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 840. "[*A*] *defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime.*" (Emphasis added.) *State* v. *Salamon*, supra, 287 Conn. 547–48. We iterate that "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542.

The *Salamon* court set forth a list of factors "[f]or purposes of making [the] determination [of whether a criminal defendant's movement or confinement of a victim was necessary or incidental to the commission of another crime; specifically] the jury should be instructed to consider the various relevant factors, including [1] the nature and duration of the victim's movement or confinement by the defendant, [2] whether that movement or confinement occurred during the commission of the separate offense, [3] whether the restraint was inherent in the nature of the separate offense, [4] whether the restraint prevented the victim from summoning assistance, [5] whether the restraint reduced the defendant's risk of detection and [6] whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 548.

With respect to the first *Salamon* factor, the nature and duration of the victim's movement or confinement, the petitioner argues: "The movement to the bathroom in both cases was brief in distance and the duration of the movement and confinement lasted only a few minutes. In addition, the restraint occurred extremely close in time to the robbery and it is conceivable that jurors would view the fact that [the] petitioner moved the employees into the bathroom so that he could escape as being part and parcel of the robbery." The respondent counters that "[o]n the facts of this case, the nature and duration of the movements and confinements reinforce their independent significance." We agree with the petitioner that this factor weighs in his favor.

Analysis of this factor is guided by our decision in *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 430–432, where we observed: "[I]n *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93, our Supreme Court attempted to categorize various *Salamon* incidental restraint cases with differing degrees

of confinement or movement: Although no minimum period of restraint or degree of movement is necessary for the crime of kidnapping, an important facet of cases where the trial court has failed to give a *Salamon* instruction and that impropriety on appellate review has been deemed harmless error is that longer periods of restraint or greater degrees of movement demarcate separate offenses. See *State* v. *Hampton*, supra, 293 Conn. 463–64 (defendant confined victim in a car and drove her around for approximately three hours before committing sexual assault and attempted murder); *State* v. *Jordan*, [129 Conn. App. 215, 222–23, 19 A.3d 241] (evidence showed the defendant restrained the victims to a greater degree than necessary to commit the assaults even though assaultive behavior spanned entire forty-five minute duration of victims' confinement) [cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011)]; *State* v. *Strong*, [122 Conn. App. 131, 143, 999 A.2d 765] (defendant's prolonged restraint of victim while driving for more than one hour from one town to another not merely incidental to threats made prior to the restraint) [cert. denied, 298 Conn. 907, 3 A.3d 73 (2010)]; and *State* v. *Nelson*, [118 Conn. App. 831, 860–62, 986 A.2d 311] (harmless error when defendant completed assault and then for several hours drove victim to several locations) [cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010)]. *Thus, as these cases demonstrate, multiple offenses are more readily distinguishable—and, consequently, more likely to render the absence of a Salamon instruction harmless—when the offenses are separated by greater time spans, or by more movement or restriction of movement.*

"*Conversely, multiple offenses occurring in a much shorter or more compressed time span make the same determination more difficult and, therefore, more likely to necessitate submission to a jury for it to make its factual determinations regarding whether the restraint is merely incidental to another, separate crime.* In those scenarios, [in which] kidnapping and multiple offenses occur closer in time to one another, it becomes more difficult to distinguish the confinement or restraint associated with the kidnapping from another substantive crime. The failure to give a proper *Salamon* instruction in those scenarios is more likely to result in harmful error precisely because of the difficulty in determining whether each crime has independent criminal significance. See *State* v. *Thompson*, [118 Conn. App. 140, 162, 983 A.2d 20 (2009)] (within fifteen minutes defendant entered victim's car, pushed her behind a building and sexually assaulted her) [cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010)]; *State* v. *Flores*, [supra, 301 Conn. 89] (defendant's robbery of victim in her bedroom lasted between five and twenty minutes); *State* v. *Gary*, [120 Conn. App. 592, 611, 992 A.2d 1178] (defendant convicted of multiple sexual assaults and an attempted sexual assault that were in

close temporal proximity to the defendant's restraint of the victim; thus court determined evidence reasonably supports a finding that the restraint merely was incidental to the commission of other crimes, namely, sexual assaults and attempted sexual assault; lack of *Salamon* instruction harmful error) [cert. denied, 297 Conn. 910, 995 A.2d 637 (2010)]." (Emphasis added; internal quotation marks omitted.); see generally *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. App. 743 (review of appellate decisions reveals that absence of *Salamon* instruction is generally more prejudicial where kidnapping related actions were closely aligned in time, place and manner to other criminal acts and these factors are particularly crucial).

In the present case, at the criminal trial, the state presented testimony that the length of the entire store in Newington was "maybe thirty yards." In response to a question regarding the distance from the counter to the bathroom, Kozlowski stated: "[The bathroom is] actually right behind [the counter] but there is a wall. I mean, you'd have to walk maybe twelve, twenty, about twenty-four feet, basically a square." Silk testified that the two employees and the petitioner remained by the counter for approximately four to five minutes.

After moving the two employees to the bathroom, the petitioner then placed a mop handle behind the door. A few minutes later, the employees heard a bell that sounded when someone entered or exited the store. The employees then pushed open the door to the bathroom and called the police. Silk specifically indicated that the two employees remained in the bathroom for a period of time "[u]nder two minutes. Maybe even under a minute."

With respect to the criminal activity at the Southington store, Wright testified that the entire proceedings, from the time the petitioner entered the store until he left, lasted five to ten minutes. Feltman indicated that her encounter with the petitioner in front of the cash register lasted four to five minutes. Feltman also noted that a narrow hallway, with three doors, connected the main showroom to the bathroom area. Wright and Feltman testified that they remained in the bathroom for a few minutes before exiting and calling the police.

In each instance, the petitioner's criminal conduct occurred at a single location. See *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 432. Furthermore, the robberies and purported kidnappings were not separated by a significant time period or distance. Id., 432–33. Under these facts, it is difficult to determine whether each crime had independent criminal significance. Id., 431. Given the "close temporal proximity to the alleged kidnapping and [the fact that] any confinement/movement was limited in nature and distance," this factor supports the petitioner's con-

tention that the lack of a *Salamon* instruction was not harmless error. Id., 432–33; see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 79–80 (petitioner's actions were continuous, uninterrupted course of conduct and lasted a few minutes where he pursued, grabbed, threatened and sexually assaulted victim); *State* v. *Flores*, supra, 301 Conn. 87 (Supreme Court noted that where victim neither was bound nor moved physically, but was restrained on bed for no more than five minutes, failure to provide jury with *Salamon* instruction was not harmless); *Epps* v. *Commissioner of Correction*, supra, 153 Conn. App. 741 (evidence neither overwhelming nor undisputed regarding restriction of victim's movements during assault); cf. *State* v. *Hampton*, supra, 293 Conn. 464 (passage of substantial amount of time clearly showed defendant's intent to prevent victim's liberation for longer period of time or to greater degree than necessary to commit subsequent crimes); *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 841 (absence of *Salamon* instruction harmless where, inter alia, criminal conduct lasted for nearly two hours and was interrupted by actions of third party and victim's escape efforts); *Eric M.* v. *Commissioner of Correction*, supra, 153 Conn. App. 846–47 (failure to give *Salamon* instruction harmless where victim had been sexually assaulted for few minutes and restrained for five hours); *State* v. *Nelson*, supra, 118 Conn. App. 860–61 (court noted significance of substantial length of restraint and that five hour period of restraint constituted overwhelming evidence of intent to prevent liberation for longer period of time than necessary to commit assault).

Next, we consider the second *Salamon* factor, that is, whether the confinement or movement of the three store employees and Feltman occurred during the commission of the robberies. See, e.g., *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 433. The habeas court determined that "[t]hese movements and confinements were perpetrated *after* the crimes of robbery were committed and cannot conceivably be regarded as coincidental with or necessary to complete the substantive crimes of robbery. Depriving someone of their freedom of movement by imprisoning them in a bathroom subsequent to acquiring their money, although convenient for the robber, is not inherent in the crime of robbery." (Emphasis in original.) The respondent agrees with the habeas court's statement that the crime of robbery had been completed prior to the movement and confinement of the three store employees and Feltman, which supports the contention that the absence of the *Salamon* instruction was harmless. The petitioner maintains that the jury could have concluded that the placing of the three store employees and Feltman in the bathrooms was part of the robberies and that the robberies did not end as soon as the petitioner took the money. Again, we agree with the peti-

tioner.

Initially, we address whether the robberies ended as soon as the petitioner took the money. At common law, robbery was defined as "the felonious taking of personal property from the person or custody of another by force or intimidation." *State* v. *Reid*, 154 Conn. 37, 39, 221 A.2d 258 (1966). In the present case, the petitioner was convicted of violating § 53a-134 (a) (4), which provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 *or of immediate flight therefrom*, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." (Emphasis added.) General Statutes § 53a-133, in turn, defines a robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." See also *State* v. *Wallace*, 56 Conn. App. 730, 740–41, 745 A.2d 216, cert. denied, 253 Conn. 901, 753 A.2d 939 (2000).

The petitioner continued to display and threaten the use of a firearm after he had used or threatened the use of physical force in the act of committing a larceny at the Newington and Southington stores.[9] In other words, the jury could have determined that the petitioner continued to violate § 53a-134 (a) as he commandeered the three store employees and Feltman into the bathrooms and that the robbery offenses had not concluded with his taking of the money from each store. See also 67 Am. Jur. 2d, Robbery § 4 (2018) ("[r]obbery has been described as a continuing offense, or a continuous transaction, that is ongoing until the robber has won his or her way to a place of temporary safety." [Footnotes omitted.]); 77 C.J.S., Robbery § 1 (2018) ("[r]obbery is not confined to any fixed locus, but is frequently spread over a considerable distance and varying periods of time. Accordingly, robbery may be characterized as a continuing offense which is not complete until the robbers reach a place of temporary safety." [Footnote omitted.]).

Our determination that the crime of robbery may continue after the taking of the property finds support in our case law. For example, in *State* v. *Ghere*, 201 Conn. 289, 290, 513 A.2d 1226 (1986), the defendant challenged his conviction of attempt to commit robbery in the first degree as an accessory on the basis of insufficient evidence. Specifically, the defendant claimed that the state had failed to prove that he had "used or threat-

ened to use force 'in the course of' attempting the larceny under . . . § 53a-133 and that, as a result, he could not be found guilty of attempted robbery in the first degree." Id., 296–97. In *Ghere*, the defendant and another man approached the victim in a supermarket parking lot, blocked him from proceeding into the store and asked for money. Id., 291–92. After a brief verbal exchange, the victim refused to give the defendant money. Id., 292. The defendant stepped toward the victim and displayed a blackjack. Id. The defendant then struck the victim in the face with the weapon, and then punched him several times in the stomach. Id. After the victim pretended to be unconscious, the defendant and his companion quickly departed from the parking lot without searching the victim. Id.

In rejecting the defendant's insufficiency claim, our Supreme Court stated: "We cannot agree with the defendant's position . . . that the use of force was not 'in the course of' the attempted robbery because the assault of the victim occurred subsequent to the demand for money. It is well established that, under . . . § 53a-133, *if the use of force occurs during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after, it is considered to be 'in the course of' the robbery or the attempted robbery within the meaning of the statute.* . . . In the present case, although the defendant could have assaulted the victim for any number of reasons, including frustration, anger, fear or desire to keep the victim from pursuing him, the assault occurred within seconds of the demand for money. The blackjack was also apparently in the defendant's hand while the demand was made. From these facts the jury could reasonably have concluded that the force used 'was within the sequence of events directly connected with the attempted robbery.' " (Citations omitted; emphasis added.) Id., 297–98; see also *State* v. *Moore*, 100 Conn. App. 122, 129–130, 917 A.2d 564 (2007) (well within province of jury to find that defendant's threat was made during continuous sequence of events surrounding theft of property).

We applied this reasoning in *State* v. *Cooke*, 89 Conn. App. 530, 874 A.2d 805, cert. denied, 275 Conn. 911, 882 A.2d 677 (2005). In *Cooke*, the defendant claimed on appeal that, inter alia, there was insufficient evidence to support his conviction of felony murder. Id., 533. The defendant, along with two others, conducted an armed robbery of a "garage party" in Bridgeport, taking money, jewelry and other items from the guests. Id., 533–34. Police officers arrived and a shootout ensued. Id., 534. The victim, a guest at the party, died as a result of a bullet fired from a gun carried by one of the defendant's fellow perpetrators. Id.

On appeal, the defendant argued that by the time the victim had been killed, the robbery had been completed,

and therefore there was insufficient evidence for the jury to conclude that "the use of force was within the sequence of events directly connected to the robbery." (Internal quotation marks omitted.) Id., 535. In rejecting this argument, we relied on the reasoning in *State* v. *Ghere*, supra, 201 Conn. 297, and determined there was evidence for the jury to conclude that use of force, i.e., shooting at the police, was part of an effort to retain the stolen property and elude capture. *State* v. *Cooke*, supra, 89 Conn. App. 536–37. Additionally, there was evidence before the jury that the victim had made an effort to stop the defendant and his fellow perpetrators, and was shot and killed as a result thereof. Id., 537. Thus, there was sufficient evidence that the use of force had occurred during the continuous sequence of events related to the taking of property, even though some time had elapsed after the actual taking, so as to be considered in the course of the robbery. Id., 536–37.

For these reasons, we conclude that the habeas court improperly concluded that the movement and confinement of the three store employees and Feltman in both the Newington and Southington stores occurred after the robberies had been committed and could not "conceivably be regarded as coincidental with or necessary to complete the substantive crimes of robbery." We further disagree that it is "crystal clear" that the intent and purpose of the petitioner was to delay the three store employees and Feltman from summoning assistance and reporting his crimes to the police, thereby aiding in the petitioner's escape.[10] The jury reasonably could have determined that the confinement and movement of the three store employees and Feltman after the taking of the money was part of the course of events of the robberies.

We again are guided by our decision in *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 415. In that case, the petitioner, Phillip White III, had been convicted of kidnapping in the second degree with a firearm and burglary in the second degree with a firearm. Id., 419–20. White's conviction stemmed from his actions on June 24, 2003. Id., 417. On that day, White rang the doorbell of a home in Fairfield and told the teenage complainant who answered the door that he was selling magazines to earn money for college. Id. The complainant informed White that her parents were not home and that he should return later. Id. White requested to use the bathroom and entered the home without receiving permission from the complainant. Id. White made a second sales effort, but the complainant again declined to purchase any magazines. Id., 418.

White then closed the front door, placed his hand in his rear pocket, and informed the complainant that he had a gun. Id. After ordering her to sit on the couch, he learned that no one else was present in the home. Id. After a few minutes, White stated that he wanted

to go upstairs and placed his hand on the complainant's elbow. Id. Upon this physical contact, the complainant began to cry and scream; in response, White instructed her to be quiet. Id. White also prevented the complainant's attempt to exit the home via the front door. Id. The complainant continued to scream, and White "suddenly stopped and said that he was just playing. [White] then called the complainant a 'scaredy-ass,' opened the front door and ran out of the house." Id., 418–19.

The court granted White's motion for summary judgment with respect to his habeas petition, concluding that he was entitled to a *Salamon* instruction and the absence of that instruction was not harmless. Id., 422. On appeal, we affirmed the summary judgment rendered in favor of the petitioner. Id., 439. In that case, the respondent claimed, with respect to the second *Salamon* factor, that the burglary had been completed prior to White's conduct that comprised the kidnapping, specifically, that the burglary had been completed once White had entered the home and informed the complainant that he had a gun. Id., 433. According to the respondent, White's subsequent actions, such as compelling the complainant to sit on the couch, telling her to go upstairs and touching her arm, were unnecessary to accomplish the completed crime of burglary. Id.

We did not "find this unduly legalistic line of reasoning persuasive. The respondent's syllogism fail[ed] to recognize that the jury could have viewed [White's] actions . . . as *a continuous, uninterrupted course of conduct all relating to the burglary offense.*" (Emphasis added.) Id. In support, we cited authority that a burglary continues until all parties participating in that crime have left the property. Id., 434. Acknowledging the propriety of the respondent's argument that sufficient evidence for the burglary conviction attached at the point when White stated that he had a gun while in the home of the complainant, we nevertheless concluded that "the jury could have deemed the burglary to be in progress for the entirety of the ten minutes in which he was at the residence because he remained on the premises with the intent to commit a crime. . . . This is especially true under the facts of this case because the underlying crime that formed the basis of [White's] intent for his burglary charge was never completed, and, thus, the jury reasonably could have found that his intent to 'commit a crime therein' was ongoing up until the point at which he abruptly left the residence." (Citation omitted; emphasis omitted; footnote omitted.) Id., 434–35.[11] Ultimately, we were unable to conclude that had the jury been given a *Salamon* instruction, it would have found that White's actions confining or moving the complainant had not occurred during the commission of the burglary. Id., 435; see also *State* v. *Flores*, supra, 301 Conn. 87 (where victim was restrained on bed for brief time while defendant and accomplices searched bedroom for valuables and was

released after perpetrators left house, Supreme Court could not conclude failure to provide jury with *Salamon* instruction was harmless).

Similarly, in the present case, we are unable to conclude that a properly instructed jury would have necessarily determined that the actions of the petitioner moving the three store employees and Feltman to the bathrooms and confining them therein took place after a completed robbery. As we previously noted, the crime of robbery does not necessarily terminate with the taking of another's property. The jury reasonably could have determined that petitioner's actions following his receipt of the money from the cash registers were part of a continuous sequence of events directly connected to the robberies of the Newington and Southington stores. Accordingly, the second *Salamon* factor supports the petitioner.

Next, we consider the third *Salamon* factor, that is, whether the restraint was inherent in the nature of the separate offense of robbery. The respondent recognizes that in *State* v. *Fields*, supra, 302 Conn. 247–48, our Supreme Court specifically rejected the argument that when restraint is not an element of the underlying crime, a *Salamon* instruction is not required and instead determined that the jury must decide whether the restraint was merely incidental to the underlying crime or had independent criminal significance.[12] Stated differently, because restraint is not an element of § 53a-134 (a) (4), the proper question is whether the petitioner's restraint of the three employees and Feltman was inherent to the robbery of the stores. See *White* v. *Commissioner of Correction*, supra, 170 Con. App. 436. The respondent argues that the restraint here was not incidental to the robberies, which, in the respondent's view, had been completed. We disagree.

We previously have rejected the respondent's argument that the robberies at the Newington and Southington stores had been completed at the time of the movement and confinement of the three employees and Feltman. Furthermore, we iterate that the jury could have found that the movement of the three store employees and Feltman from the sales floor to the bathrooms, and confinement therein, was inherent to the nature of the robberies at the two stores. See id., 435–37. In the absence of a *Salamon* instruction, there was nothing to prevent the jury from finding the petitioner guilty of kidnapping even if it had concluded that the restraint was incidental to the robberies. *State* v. *Fields*, supra, 302 Conn. 252. Accordingly, we conclude that the third *Salamon* factor weighs in favor of the petitioner.

The remaining *Salamon* factors, whether the restraint prevented the three employees and Feltman from summoning assistance, whether the restraint reduced the risk of detection and whether the restraint created a significant danger or increased the risk of

harm to the victim independent of that posed by the robbery, afford the petitioner little, if any, support. See, e.g., *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 437–38. We disagree with the statement in the petitioner's brief that the confinement in the bathroom did not prevent the three employees and Feltman from summoning assistance or reduce the risk of detection.

Nevertheless, the significance of the *Salamon* factors that do weigh in favor of the petitioner, namely, the nature and duration of the movement and confinement of the employees, whether such confinement occurred during the commission of the robbery and whether the restraint was inherent in the nature of the robbery, outweighs the significance of those that support the respondent's claim of harmless error. See *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 437–38 (certain *Salamon* factors cut in favor of respondent, but did not trump significance of others that weighed in favor of petitioner); see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93 (noting that where confinement or restraint associated with kidnapping occurs in close time frame to other offense, failure to provide *Salamon* instruction more likely to result in harmful error because of difficulty in determining whether each crime had independent criminal significance).

We emphasize the respondent's considerable burden in this appeal. First, as we previously have explained in some detail, the law of kidnapping has evolved significantly since the time of the petitioner's criminal trial. These developments apply retroactively to his convictions. Following a concession that the petitioner was entitled to a *Salamon* instruction at the criminal trial, the respondent is required under our law to persuade this court beyond a reasonable doubt that the absence of the instruction did not contribute to the jury verdict regarding the kidnapping counts. *State* v. *Field*, supra, 302 Conn. 245–46; *State* v. *Flores*, supra, 301 Conn. 83; see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 77–78 (jury instruction that improperly omitted essential element from charge constitutes harmless error only if reviewing court concludes beyond reasonable doubt that omitted element was uncontested and supported by overwhelming evidence such that verdict would have been same absent error). After considering and applying the *Salamon* factors, and guided by the precedent of our appellate courts, we are not satisfied that the question of the petitioner's intent in the movement and confinement of the three employees and Feltman in the Newington and Southington stores was uncontested or supported by overwhelming evidence.

A jury provided with a *Salamon* instruction reasonably could determine that the petitioner's movement and confinement of the three employees and Feltman

in the bathrooms was done in furtherance of the August 30, 1995 and September 13, 1995 robberies.[13] See, e.g., *State* v. *Flores*, supra, 301 Conn. 87 (test is not whether jury would return a guilty verdict if properly instructed, but rather whether it was reasonably possible that jury, instructed in accordance with *Salamon* might find petitioner's conduct constituted robbery but did not rise to level of kidnapping). Put differently, considering the de minimis movement and confinement[14] of the three employees and Feltman after the petitioner took the money from cash registers, as well as the uncertainty in ascertaining whether the movement and confinement of these individuals in the bathrooms was a continuous, uninterrupted course of conduct related to the robberies or an independent criminal act, we cannot conclude that the respondent satisfied his heavy burden in this case. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93 (where kidnapping and other offenses occur closer in time to one another, it becomes more difficult to distinguish confinement or restraint associated with kidnapping from other crimes and lack of *Salamon* instruction more likely to result in harmful error because of difficulty in determining whether each crime had independent criminal significance); *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. App. 743 (absence of *Salamon* instruction is generally more prejudicial in cases where perpetrator's kidnapping related actions were closely aligned in time, place and manner to other criminal acts). Thus, because the respondent has not proven that the absence of a *Salamon* instruction was harmless beyond a reasonable doubt, the petitioner is entitled to the remedy of the reversal of the kidnapping convictions and a remand for a new trial on those offenses. See *State* v. *DeJesus*, supra, 288 Conn. 434–39.

The judgment of the habeas court is reversed and the case is remanded with direction to render judgment granting the petition for a writ of habeas corpus, vacating the petitioner's convictions under § 53a-92 (a) (2) (B) and ordering a new trial on those offenses.

In this opinion PRESCOTT, J., concurred.

[1] General Statutes § 53a-92 provides in relevant part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ."

[2] The petitioner was convicted under two separate criminal cases, docket numbers CR-96-0161628-T and CR-96-0094045-T, that were consolidated for trial.

[3] The petitioner received a total effective sentence of fifteen years incarceration in CR-96-0161628-T. In CR-96-0094045-T, the petitioner was sentenced to a total effective sentence of ten years incarceration to be served consecutively to the sentence imposed in CR-96-0161628-T.

[4] At oral argument before this court, the respondent asserted, and the petitioner's counsel concurred, that at the time of his convictions, the petitioner was serving a sentence imposed in an unrelated case.

[5] In its decision, the habeas court noted that the respondent had conceded that "had the holding of *State* v. *Salamon*, supra, [287 Conn. 509], prevailed in 1997, the petitioner would have been entitled to a jury instruction conforming to that holding." The issue of whether a *Salamon* instruction was required

at the petitioner's criminal trial is not part of our consideration or analysis in this case. See, e.g., *State* v. *Jordan*, 129 Conn. App. 215, 220, 19 A.3d 241 (where state failed to argue that *Salamon* did not apply, reviewing court need only determine whether error was harmful to defendant), cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011). We also note that "in *State* v. *Fields*, 302 Conn. 236, 24 A.3d 1243 (2011), our Supreme Court indicated that whenever kidnapping and another substantive offense are charged, a *Salamon* instruction ordinarily must be given." *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 425; cf. *Pereira* v. *Commissioner of Correction*, 176 Conn. App. 762, 777–78, 171 A.3d 105 (*Salamon* instruction not required in case where kidnapping had been completed, and therefore was not incidental to murder of victim), cert. denied, 327 Conn. 984, 175 A.3d 43 (2017).

[6] On appeal, the petitioner challenges certain factual findings made by the habeas court. Under the procedural circumstances of this case, we note our standard of review would differ from the usual standard due to the absence of live witnesses in the habeas trial. "Although we generally review a trial court's factual findings under the clearly erroneous standard, when a trial court makes a decision based on pleadings and other documents, rather than on the live testimony of witnesses, we review its conclusions as questions of law. *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53–54, 607 A.2d 424 (1992) (In this case, the trial court's determinations were based on a record that consisted solely of a stipulation of facts, written briefs, and oral arguments by counsel. The trial court had no occasion to evaluate the credibility of witnesses or to assess the intent of the parties in light of additional evidence first presented at trial. The record before the trial court was, therefore, identical with the record before this court. In these circumstances, the legal inferences properly to be drawn from the parties' definitive stipulation of facts raise questions of law rather than of fact.); *Giorgio* v. *Nukem, Inc.*, 31 Conn. App. 169, 175, 624 A.2d 896 (1993) ([i]f . . . [t]he trial court's conclusions as to intent were based not on such factors as the credibility of witnesses, or on the testimony of live witnesses as to the meaning of documents or as to circumstances surrounding the execution of those documents . . . but were instead based on the intent expressed in the contract itself and the affidavits submitted with the motion for summary judgment considered in the light of their surrounding circumstances . . . [t]hen the legal inferences to be drawn from the documents raise questions of law rather than of fact . . .)." (Internal quotation marks omitted.) *State* v. *Lewis*, 273 Conn. 509, 516–17, 871 A.2d 986 (2005); see also *State* v. *Kallberg*, 326 Conn. 1, 17–18, 160 A.3d 1034 (2017); *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002 (2007) (when trial court makes decision based on pleadings on other documents, rather than on live testimony of witnesses, appellate court reviews its conclusions as questions of law and employs plenary review); cf. *State* v. *Lawrence*, 282 Conn. 141, 155–57, 920 A.2d 236 (2007) (improper for appellate court to supplement credibility determinations of fact finder, regardless of whether fact finder relied on cold printed record to make such determinations).

Thus, were we to review the factual findings challenged by the petitioner, we would employ the plenary, rather than the clearly erroneous, standard of review. We need not, however, determine whether the habeas court made factual findings that were improper as a matter of law. Instead, we conclude that the habeas petition should have been granted because the respondent failed to demonstrate that the absence of the *Salamon* instruction was harmless beyond a reasonable doubt regardless of whether the challenged findings were proper.

[7] After oral argument, we stayed the present appeal, sua sponte, until the final disposition of *Epps* v. *Commissioner of Correction*, supra, 153 Conn. App. 729. Our Supreme Court granted certification in *Epps* to determine, inter alia, "[w]hether . . . in a collateral proceeding, where the petitioner claims that the trial court erred by omitting an element of the criminal charge in its final instructions to the jury, is harm measured in accordance with *Brecht* v. *Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), or is harm measured in accordance with *Neder* v. *United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)?" *Epps* v. *Commissioner of Correction*, 323 Conn. 901, 150 A.3d 679 (2016).

Under the *Brecht* standard, reversal of a criminal conviction is warranted when error at the petitioner's underlying criminal trial had a "substantial and injurious effect or influence in determining the jury's verdict." (Internal quotation marks omitted.) *Brecht* v. *Abrahamson*, supra, 507 U.S. 637. Under the *Neder* standard, a petitioner is not entitled to habeas relief if "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction

is properly found to be harmless." *Neder* v. *United States*, supra, 527 U.S. 17.

Our Supreme Court dismissed *Epps* because "[t]he respondent had squarely argued to the habeas court that the petition should be assessed under the harmless beyond a reasonable doubt standard. The respondent never argued in the alternative that a higher standard of harmfulness should apply to collateral proceedings even if the petitioner's claim was not subject to procedural default, despite federal case law applying a higher standard since 1993." *Epps* v. *Commissioner of Correction*, 327 Conn. 482, 485, 175 A.3d 558 (2018). In the present case, at the habeas trial, there was no request that the *Brecht* standard apply.

Following the release of *Epps* v. *Commissioner of Correction*, supra, 327 Conn. 482, we afforded the parties an opportunity to file supplemental briefs addressing the question of the appropriate standard for assessing harm. The parties filed supplemental briefs with this court on February 2, 2018. The petitioner contends that we should follow the path of our Supreme Court in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56, and *Luurtsemma* v. *Commissioner of Correction*, supra, 299 Conn. 740, and apply the harmlessness beyond a reasonable doubt standard. The respondent claims that the petitioner's claim fails under either standard or, in the alternative, this court should adopt the *Brecht* standard.

"It is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Madera*, 160 Conn. App. 851, 861–62, 125 A.3d 1071 (2015). Accordingly, we will employ the test set forth in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56, and *Luurtsemma* v. *Commissioner of Correction*, supra, 299 Conn. 740.

[8] The dissent centers its analysis on *State* v. *Salamon*, supra, 287 Conn. 509. In that case, our Supreme Court reconsidered the interpretation of our kidnapping statutes and required the jury instruction if the evidence reasonably supports the finding that the restraint in a particular case was not merely incidental to the commission of another crime. Id., 547–48.

*Salamon*, of course, is the necessary starting point for these types of cases. The law, however, has developed beyond the rule established in *Salamon*. As we have discussed in greater detail, the *Salamon* rule retroactively applies to collateral proceedings on judgments rendered final prior to *Salamon*. See *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740. Furthermore, in habeas proceedings, such as the present case, where a petitioner was entitled to a *Salamon* instruction, the burden of establishing harmlessness beyond a reasonable doubt lies with the respondent with respect to the omitted jury instruction. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56. Our review of the present case, therefore, must include the *Salamon* principles as considered in the context of a habeas proceeding where the question is limited to whether the respondent proved to this court that the absence of the jury instruction was harmless beyond a reasonable doubt. See, e.g., id.; *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 415; *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 803.

[9] General Statutes § 53a-119 provides in relevant part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[10] We also conclude that the respondent's reliance on our decision in *State* v. *Golder*, 127 Conn. App. 181, 14 A.3d 399, cert. denied, 301 Conn. 912, 19 A.3d 180 (2011), is misplaced. In that case, the defendant entered the victim's Greenwich home for the purpose of stealing jewelry. Id., 183–84. He grabbed the victim, picked her up and asked where he could find the jewelry. Id., 184. The defendant grabbed the victim in a "bear hug" and carried her to kitchen, where he seized a bag of jewelry. (Internal quotation marks omitted.) Id. He then told the victim that he would place her in the basement; however, after she informed him of her asthma and claustrophobia, he instead took her to the bedroom and tied her to the bed with her husband's neckties. Id. The defendant then took her car keys and departed. Id. After approximately twenty-five minutes, the victim freed herself and called the police. Id., 184–185.

The defendant subsequently was convicted of various kidnapping, larceny and burglary offenses. Id., 187. In his direct appeal, the defendant claimed that the failure to provide the jury with a *Salamon* instruction constituted reversible error. Id., 187–88. We disagreed. "Here, the victim was restrained to an extent exceeding that which was necessary to accomplish or to com-

plete the other crime, and restraining [the victim] was not necessary for the defendant to accomplish any crime. Therefore, the holding of *Salamon* does not control this case." (Footnote omitted.) Id., 190. Specifically, we reasoned that the crime of burglary had been completed when he entered the victim's home with the intent to take the jewelry. Id. After the completion of that crime, the defendant then moved the victim to the bedroom and tied her to the bed with her husband's neckties. Id. "While this restraint facilitated the defendant's escape, it was not necessary to accomplish the burglary, which already had been completed. We conclude that the restraint that occurred after the defendant took the jewelry from the kitchen closet had its own independent significance." Id., 190–91.

*Golder* is distinguishable from the present case. In the former, we determined that the underlying crime of burglary had been completed, and therefore the subsequent restraint of the victim constituted the independent crime of kidnapping. Furthermore, the restraint in that case lasted for a greater period of time, approximately twenty-five minutes, as compared to the relatively brief time periods in the present case. The defendant in *Golder* also physically moved the victim among several rooms and tied her to the bed. Id., 184–85. This level of restraint stands in marked contrast to the present case, where the petitioner moved the employees from areas near the cash register to bathrooms, from which they easily escaped following the petitioner's departure. Cf. *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 842 (petitioner's asportation of victim to window well, essentially a deep hole, limited her escape options and acted as second level of restraint). Because the jury reasonably could conclude that the movement and confinement of the employees were part of the robberies of the two stores, the failure to provide a *Salamon* instruction constituted harmful error, and the respondent's reliance on *Golder* is misplaced.

[11] The dissent misreads *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 433–35, to suggest that "there cannot be a finding of harmless error so long as the underlying crime is still ongoing and continuing . . . ." We do not read *White* so broadly. The discussion in *White* about the duration of the underlying burglary was in response to the particular arguments raised by the respondent in that case. See id.

[12] In *Fields*, our Supreme Court stated: "On the contrary [to the state's argument], restraint may be used in the commission of the underlying offense, including assault, as in the present case, even though it is not an element of that offense. Thus, depending on the facts of the underlying crime, the fact finder reasonably might conclude that the kidnapping was merely incidental to the underlying crime irrespective of whether that crime requires the use of restraint. A *Salamon* instruction is necessary in such cases to ensure that the defendant is convicted of kidnapping only when the restraint that forms the basis of the kidnapping charge has criminal significance separate and apart from that used in connection with the underlying offense." *State* v. *Fields*, supra, 302 Conn. 248.

[13] The dissent contends that we have expanded "the definition of the word 'necessary' to apply to conduct that was unnecessary to complete the robberies, but simply made their completion easier." As we discuss in greater detail in *Bell* v. *Commissioner of Correction*, 184 Conn. App. 150, 171–72 n.11, A.3d (2018), the asportation of the victim in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 80, was not necessary for the completion of sexual assault. Nevertheless, our Supreme Court determined that the petitioner in that case was entitled to a new trial based on consideration of the *Salamon* factors, primarily minimal movement of the victim and the fact that the multiple offenses occurred in a compressed time span. Id., 93–94.

[14] Our use of the phrase "de minimis" refers to the brief distance and relatively short period of time between the robbery and the restraint and confinement of the three employees and Feltman by the petitioner, when compared to other cases addressing a conviction for kidnapping and another crime. See, e.g., *State* v. *Hampton*, supra, 293 Conn. 463–64 (defendant confined victim in car and drove her around for three hours prior to sexual assault). We do not ignore or minimize the increased fear experienced by the four victims in this case at the hands of the petitioner. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 80 n.15; *State* v. *Flores*, supra, 301 Conn. 88.